*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| | |
|---|---|
| ESTTA Tracking number: | **ESTTA111194** |
| Filing date: | **11/22/2006** |

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Proceeding | 91166420 |
| Party | Plaintiff<br>Campagnolo S.R.L.<br>Campagnolo S.R.L.<br><br>, |
| Correspondence Address | Anthony S. Volpe<br>Volpe and Koeing, P.C.<br>United Plaza, Suite 1600 30 South 17th Street<br>Philadelphia, PA 19103<br><br>msnyder@volpe-koenig.com, JOMalley@volpe-koenig.com, mcamus@volpe-koenig.com, ptomail@volpe-koenig.com, JRyan@volpe-koenig.com |
| Submission | Other Motions/Papers |
| Filer's Name | John J. O'Malley |
| Filer's e-mail | JOMalley@volpe-koenig.com, JRyan@volpe-koenig.com, kkee@volpe-koenig.com, ptomail@volpe-koenig.com |
| Signature | /John J. O'Malley/ |
| Date | 11/22/2006 |
| Attachments | Opposer's Reply to Applicant's Response to Opposer's Motion to Suspend.pdf ( 18 pages )(826104 bytes ) |

TRADEMARK

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| In the Trademark Opposition of<br><br>Mark:      CAMPNY<br>Appln. No.:  78/438,884<br>Published:  June 21, 2004<br><br>CAMPAGNOLO S.R.L.,<br><br>                    Opposer<br>        vs.<br><br>BURKINA WEAR, INC.,<br>                    Applicant | Opposition No. 91166420<br><br>Date: November 21, 2006 |

**OPPOSER'S REPLY TO APPLICANT'S RESPONSE TO OPPOSER'S MOTION TO SUSPEND AND OPPOSER'S RESPONSE TO APPLICANT'S MOTION TO DISMISS, MOTION FOR SANCTIONS, AND MOTION FOR JUDGMENT ON THE PLEADINGS**

Trademark Trial and Appeal Board
U.S. Patent and Trademark Office
P.O. Box 1451
Alexandria, VA 22313-1451

## I.   INTRODUCTION

Opposer, Campagnolo S.r.l. recently filed a Civil Action in the Eastern District of Pennsylvania ("Civil Action") that asserts that Applicant, Burkina Wear, Inc.'s use of its trademark "CAMPNY" is likely to cause confusion with and dilute Opposer's "CAMPY" mark.  These are the same issues for the same marks that the

\*         \*         \*
**Certificate of Mailing and Service**

I further certify that this document is being deposited with the U.S. Postal Service as First Class Mail in an envelope addressed to Erik M. Pelton, Esquire, P.O. Box 100637, Arlington, VA  22210, on November 21, 2006.

_11/22/06_                                                     _/s/ John J. O'Malley_
Date of Signature                                          John J. O'Malley

Board is deciding in this Opposition. Because the District Court's determination is binding on the parties and the Board must rely on the District Court's findings regardless of the outcome of the Civil Action, it is a waste of resources to continue this Opposition. Therefore, the Board should follow its well-established and sensible policy and suspend the proceedings. Applicant's response provides no legal or practical justification for the Board not to do so. Further, it is clear that Applicant included motions for sanctions and a motion for judgment on the pleadings as a tactic to place substantive outstanding issues before the Board just to avoid suspension. These motions are meritless and can be easily dismissed.

## II.   PROCEDURAL BACKGROUND

1. On October 31, 2006, Opposer filed a complaint in the United States District Court for the Eastern District of Pennsylvania asserting that Applicant is liable for trademark dilution under federal and New York state law, Federal Unfair Competition under 15 U.S.C. § 1125(a) and trademark infringement. A copy of the Complaint without exhibits was attached as Exhibit "A" to Opposer's Motion to Suspend.

2. Opposer's counsel sent a letter to Applicant's counsel dated November 1, 2006 enclosing a copy of the Complaint and requesting that Applicant's counsel waive service. See Exhibit A.

3. Applicant has retained separate counsel for the Civil Action. That counsel has not yet indicated whether it will waive service.

4.   On November 1, 2006, Opposer moved this Board to suspend this Opposition pending the outcome of the Civil Action in the interest of economy because that Action involves the same parties, the same trademarks, and similar issues as those involved in this Opposition.

5.   On November 3, 2006, Applicant responded to Opposer's Motion to Suspend. Applicant also moved to dismiss, for sanctions and for judgment on the pleadings.

### III.   ARGUMENT

#### A.   The Board Should Suspend This Opposition Pending the Outcome of the Civil Action

It is the Board's well-established policy to suspend Board proceedings when parties are litigating the same issues in federal court. See Black Box Corp. v. Better Box Communications Ltd., 2002 TTAB LEXIS 253, *4 (TTAB 2002); TBMP § 510.02(a); 3-11 Jerome Gilson, Trademark Protection and Practice § 11.03 (citing Guido Fioravanti v. Fioravanti Corrado S.R.L., 1 U.S.P.Q.2d 1304 (T.T.A.B. 1986) for the proposition that "a motion to suspend a PTO proceeding *will be* granted if the decision of the district court is likely to be controlling on the issues to be decided by the Office") (emphasis added). The Board has limited jurisdiction involving only the issue of registrability. See Black Box, 2002 TTAB LEXIS 253 at *4. The Board's decision is advisory to the court but the district court's decision is binding on the parties. Id. And, it is highly unlikely that the court will suspend its proceedings in light of Board proceedings because the Board's decisions have no binding or *res judicata* effect on the district court, and therefore, the court will eventually have to

3

rule on the issues regardless of the Board's decision. See 3-11 Gilson, supra § 11.03 (citing Look Magazine Enterprises S.A. v. Look, Inc., 596 F. Supp. 774, 224 U.S.P.Q. 488 (D. Del. 1984). Moreover, federal trademark infringement actions involve more legal issues than a Board proceeding, such as unfair competition, and thus, the narrower PTO decision is likely to be inconclusive as to the federal court case. 3-11 Gilson, supra § 11.03.

    Here, as Applicant points out, the issues in this Opposition are whether Applicant's mark is confusingly similar to Opposer's and whether Applicant's mark is likely to dilute Opposer's famous mark. The Complaint in the Civil Action asserts Federal Unfair Competition and trademark infringement, which require a likelihood of confusion analysis, and trademark dilution. Thus, if this Opposition continues, the Board will be simultaneously adjudicating the same issues as the federal court. It would be a waste of the parties' and the Board's resources to proceed simultaneously, especially if the court and the Board reach contrary conclusions. See Black Box, supra ("Judicial economy lies in the suspension of Board proceedings because . . . a U.S. District Court decision is binding on the parties before this administrative Board . . . and the Board decision is appealable to the U.S. District Court"); 3-11 Gilson, supra, § 11.03 ("it is clearly more efficient and less expensive to avoid duplication where the outcome of one proceeding would be dispositive of or entitled to substantial weight in the other"). Even if the Board and the court reach the same conclusions, it is unduly burdensome to make the parties duplicate their efforts in two different forums.

Applicant's Response does not provide any authority, no case law, TTAB rules, etc., and no practical rationale as to why the Board should not suspend this Opposition. Its only argument is that "it is very possible that the Civil Action would not generate a ruling regarding Applicant's application and that Opposer would . . . seek to proceed with this Opposition causing Applicant further cost, delay and significant harm". First, if the Civil Action does not "generate a ruling" it is because the parties settled the case, which likely would involve a stipulation to end this Opposition. Second, even assuming *arguendo* that there is some scenario by which the district court did not render a decision and Opposer was able to proceed with this Opposition, any activity in the Civil Action would not be wasted because the Board can follow the District Court's determination of any issues in common; and here, every issue will be in common. See 3-11 Gilson, supra § 11.03.

Applicant's brief is an attempt to make the Civil Action look like a tactic to delay Applicant's registration and an attempt by the Opposer to skirt discovery. Opposer filed the Civil Action after realizing how widespread Applicant's trademark infringement is, not to delay the registration or to avoid discovery. If Opposer sought to avoid discovery, it would not have filed an action in federal court, which provides for more liberal discovery than Board proceedings.

As Opposer noted in its Motion to Suspend, before suspending proceedings, the T.T.A.B. must also establish that the plaintiff in the proceeding has standing, and that there are no outstanding motions before it that are potentially dispositive. 37 C.F.R. § 2.117(b); TBMP § 510(a); 3-9 Gilson, supra § 9.02. Opposer has standing

in the Civil Action – this is not disputed.[1] There were no outstanding dispositive motions when Opposer moved to suspend. And as explained below, the motions included in Applicant's brief are obviously filed solely to avoid suspension. They are meritless and can be summarily denied.

>    B.    **The Board Should Deny Applicant's Motion to Dismiss and Motion For An Order Preventing Opposer From Introducing Any New Evidence or Testimony**

Although not clear, Opposer assumes that Applicant's Motion to Dismiss is not a Motion To Dismiss For Failure To State A Claim Upon Which Relief May Be Granted, which must be filed prior to, or concurrent with, Applicant's answer. William & Scott Co. v. Earl's Restaurants Ltd., 30 U.S.P.Q.2d 1871 (T.T.A.B. 1994). Opposer assumes that Applicant is requesting the sanction of "entering judgment against the disobedient party" provided in TTAB 411.04 because Applicant's entire argument relates to Opposer's alleged failure to comply with discovery obligations. Presumably, Applicant requests, in the alternative, the sanction that the Board prevent Opposer from introducing evidence.

A motion for sanctions for failure to comply with an order of the Board lies only when the Board has entered an order relating to discovery; i.e., for a protective order or compelling discovery, and that order has been violated. See TBMP § 527.01. Even if the Board finds that the non-moving party has violated a Board order, it may grant a default judgment when no less drastic remedy would be

---

[1] Applicant has also raised issues with respect to service and jurisdiction. Even assuming that Applicant is successful in its jurisdictional challenge, the Civil Action will continue, just in the Southern District of New York, where Applicant resides. Likewise, Opposer will formally serve Applicant if it refuses to waive service. These issues are not relevant.

6

effective and there is a strong showing of willful evasion because default judgment is a harsh remedy. Id.

Here, the Board has not entered an order compelling discovery. On September 20, 2006 Opposer moved this Board to grant Opposer additional time, until October 16, 2006, to respond to Applicant's discovery requests. Applicant's September 26, 2006 response asked the Board to deny Opposer's request to extend and moved the Board to compel Opposer to comply with the discovery requests within seven (7) days of the Board's order. The Board's October 12, 2006 order granted Opposer's request for an extension by extending Opposer's response period to November 1, 2006 and thereby *denied* Applicant's Motion to compel. Therefore, there was no order compelling discovery that Opposer could have violated warranting sanctions. In fact, in its October 16, 2006 Order the Board explicitly stated,

> *the Board has not issued an order compelling discovery in this case*, and [O]pposer has not stated affirmatively that it will not respond to applicant's second set of interrogatories and document requests. *Accordingly, applicant's motion for entry of discovery sanctions is inappropriate.*

See October 12, 2006 Order (emphasis added) citing Trademark Rule 2.120(g); TBMP Section 527.01 (2d ed. rev. 2004).

Even assuming *arguendo* that the Board's October 12, 2006 order somehow granted Applicant's motion to compel, there is no basis for imposing sanctions against Opposer for its failure to provide discovery responses by November 1, 2006 because Opposer's Motion to Suspend provided good cause for Opposer to defer

7

providing such responses until its Motion was decided. In <u>Leeds Technologies Limited v. Topaz Communications Ltd.</u>, the opposer moved for judgment on the pleadings and requested that discovery be suspended pending disposition of that motion. <u>Leeds</u>, Opposition No. 123,449, 2002 TTAB LEXIS 441, *2 and *3 (TTAB 2002). The opposer did not respond to the applicant's discovery requests by the deadline because of the outstanding motion and request to suspend. <u>Id.</u> The applicant argued that the opposer's motion and request to suspend should be denied because opposer's failure to timely serve its discovery responses after it filed its motion for judgment on the pleadings was an act of bad faith. <u>Id.</u> at *7 and *8. The Board disagreed finding that it is not an act of bad faith to withhold discovery responses when there is a motion that may result in a suspension order because "the parties are presumed to know that the filing of a potentially dispostive motion will result in a suspension order." <u>Id.</u> at *8. The Board found that "while proceedings had not been officially suspended by the Board at the time opposer's discovery responses were due, the Board . . . will consider proceedings suspended retroactive to the date of filing of opposer's motion for judgment on the pleadings, and opposer will have an opportunity to serve its responses to applicant's discovery." <u>Id.</u> at *8 and *9. This holding makes sense because to find otherwise would require the parties to exchange discovery only to potentially have the proceedings suspended indefinitely.

Similarly, here, it was not an act of bad faith for Opposer not to serve its discovery responses in light of the Civil Action, especially given that Opposer stated

8

that it would provide its responses if its Motion to Suspend was denied. The proceedings should be suspended retroactive to the date of Opposer's filing of the Civil Action. It would be a waste of time and resources for Opposer to provide discovery only to have the proceedings suspended.

Opposer's good faith is further shown by its efforts to communicate with counsel. After receiving Applicant's September 26, 2006 Response and Motion, counsel for Opposer contacted counsel for Applicant by telephone, in an attempt to work-out the issues. And, on November 3, 2006, counsel for Opposer wrote to counsel for Applicant in an attempt to address Applicant's issues with the Motion to Suspend. See Exhibit B. The letter also reminded Applicant that Opposer has produced over 5,000 pages of documents compared to the roughly 30 pages produced by Applicant. Exhibit B. Opposer's counsel also clarified that Opposer is not refusing to respond to the discovery requests but that it believes that it is a waste of resources to do so before the Board's decision on its Motion to Suspend. See Exhibit B. Opposer reiterated that it would provide additional responses within ten days if the TTAB denies its Motion. Exhibit B. Finally, Opposer notes that it has provided objections to Applicant's discovery requests.

Despite the clear language in the Board's October 16, 2006 Order and Opposer's reasonable proposal to provide the discovery if its motion is denied, Applicant continues to waste the Board's and Opposer's time with frivolous requests

for inappropriate discovery sanctions.[2] Clearly, these Motions are hollow attempts to try to create substantive outstanding issues to avoid suspension.

### C. The Board Should Deny Applicant's Motion For Judgment on the Pleadings

In its most transparent attempt to create an outstanding dispositive motion solely to avoid suspension, Applicant moves for judgment on the pleadings. The most obvious question is that if judgment can be rendered on the pleadings, why did Applicant wait fourteen (14) months to raise this issue? See TBMP § 504.01 (Motion for Judgment on the Pleadings may be filed after the pleadings are closed). And, if Applicant is entitled to judgment as a matter of law, why does Applicant complain that it needs fact discovery?

"A motion for judgment on the pleadings is a test solely of the undisputed facts appearing in all the pleadings." See TBMP § 504.02. A judgment on the pleadings may be granted only where, on the facts as deemed admitted, there is no genuine issue of material fact to be resolved, and the moving party is entitled to judgment on the substantive merits of the controversy, as a matter of law. Id. A party may not obtain a judgment on the pleadings if the nonmoving party's pleading raise issues of fact, which, if proved, would establish the nonmoving party's entitlement to judgment. Id. All well pleaded factual allegations of the nonmoving party must be accepted as true, while those allegations of the moving party which have been denied are deemed false. Id. All reasonable inferences from the

---

[2] In addition, in its September 26, 2006 response, Applicant requested fees even though the rules clearly prohibit this sanction. See Trademark Rule 2.127(f). Accordingly, the Board denied applicant's request as "inappropriate." See October 16, 2006 Order.

10

pleadings are drawn in favor of the nonmoving party. Id. Finally, an unresolved material issue of fact may result from an express conflict on a particular point between the parties' respective pleadings or from defendant's pleading of new matter and affirmative defenses in its answer. Leeds, 2002 TTAB LEXIS 441, *6.

Here, Applicant argues that even accepting all of the allegations in the Notice of Opposition as true, Opposer is not entitled to a judgment in its favor, as a matter of law, because Applicant's mark contains "NY" which is widely recognized as the abbreviation for the city and/or state of "New York".

However, this argument ignores the fact that the mark in question is one word, "CAMPNY", not "CAMP NY". Moreover, this is the first time Applicant has raised this "NY" issue and thus, it is not part of the pleadings. Applicant further argues that "NY" makes its mark distinctive in appearance, sound and meaning. This determination is clearly an issue of fact and is but one of the factors that the Board must consider in determining likelihood of confusion. See In re E. I. Du Pont de Nemours & Co., 476 F.2d 1357, 1361 (CCPA 1973). Applicant has failed to address the remaining likelihood of confusion factors.

These are issues of fact that are disputed in the pleadings. For example, Applicant has denied each and every one of the following paragraphs in the Amended Notice of Opposition:

> Applicant's trademark 'CAMPNY' is virtually identical to Opposer's 'CAMPY' Mark, and confusingly similar to Opposer's 'CAMPAGNOLO' Marks, and is likely to be confused therewith and mistaken therefore, to cause confusion and to lead to deception as to the origin of Applicant's Goods bearing Applicant's Mark.

11

<u>See</u> Paragraph 14.

> A consumer familiar with Opposer's Goods and Opposer's 'CAMPAGNOLO' and 'CAMPY' Marks, upon seeing Applicant's Mark used in connection with Applicant's Goods, would be confused that Applicant's Goods are associated with, sponsored by, or licensed from, Opposer, which they are not.

<u>See</u> paragraph 16.

> If Applicant is permitted to use and register Applicant's Mark for Applicant's Goods as specified in the application herein opposed, confusion in the trade will result in damage and injury to Opposer by reason that the fact that Applicant's Mark and Opposer's 'CAMPY' Mark are virtually identical, that Applicant's Mark and Opposer's 'CAMPAGNOLO' Marks are confusingly similar, and that persons familiar with Opposer's 'CAMPAGNOLO' Marks and 'CAMPY' Mark would be likely to associate Applicant's goods as being offered by, endorsed by or otherwise associated with Opposer. Furthermore, any defect, objection or fraud found with Applicant's Goods or products sold by Applicant and identified by the 'CAMPY' Mark would necessary reflect upon and seriously injure the reputation which has been established for its goods offered under the 'CAMPAGNOLO' and 'CAMPY' Marks.

<u>See</u> Paragraph 17.

> Applicant's registration and use of Applicant's 'CAMPNY' Mark tends to dilute the fame, potency, value and good will of Opposer's famous 'CAMPAGNOLO' and 'CAMPY' Marks.

<u>See</u> Paragraph 20.

These allegations and all allegations in the Amended Notice of Opposition must be taken as true. Applicant's denials create issues of fact precluding judgment

12

on the pleadings. If Opposer proves these allegations, Opposer is entitled to judgment as a matter of law. See TBMP § 504.02.

### IV. CONCLUSION

To avoid unnecessary waste of resources, the Board should follow its well-established and sensible policy and suspend the proceedings in light of the Civil Action. The Board should also deny Applicant's meritless Motions, which are merely a tactic to place substantive outstanding issues before the Board just to avoid suspension.

Respectfully submitted,

CAMPAGNOLO S.R.L.

Date: 11/22/06

By _____
John J. O'Malley
Volpe and Koenig, P.C.
United Plaza, Suite 1600
30 South 17th Street
Philadelphia, PA 19103
(215) 568-6400
Attorney for Opposer

13

# EXHIBIT A



United Plaza, Suite 1600
30 South 17th Street
Philadelphia, PA 19103

Telephone: +1-215-568-6400
Facsimile: +1-215-568-6499
www.volpe-koenig.com

— BRINGING LAW TO YOUR IDEAS —

John J. O'Malley
JOMalley@volpe-koenig.com

November 1, 2006

Erik M. Pelton, Esquire
P.O. Box 100637
Arlington, VA 22210

**LETTER ONLY VIA FACSIMILE
TO 703-525-8089
ORIGINAL TO FOLLOW
VIA REGULAR MAIL**

Re: *Campagnolo S.r.l. vs. Burkina Wear, Inc.*
     Civil Action No. 06-4856

Dear Mr. Pelton:

Campagnolo has elected to bring an action to prevent Burkina from infringing and diluting it's Campy marks.

Enclosed find 2 copies of the Notice of Lawsuit and Request for Waiver of Service of Summons and the Waiver of Service of Summons along with a copy of the Complaint filed against Burkina Wear, Inc. on October 31, 2006. If your client will waive the Summons, please review and sign a copy of the Waiver of Service and return it to me in the envelope provided within 30 days of this notice.

Also enclosed is a copy of the Motion To Suspend the TTAB proceedings.

If you have any questions or your client is interested in settling this matter, please contact me.

Very truly yours,

Volpe and Koenig, P.C.

By: _____
     John J. O'Malley

JJO/ced
Enclosures (4)

*Patents     Trademarks     Copyrights     Trade Secrets     Litigation     Licensing*

# EXHIBIT B



United Plaza, Suite 1600
30 South 17th Street
Philadelphia, PA 19103

Telephone: +1-215-568-6400
Facsimile: +1-215-568-6499
www.volpe-koenig.com

— BRINGING LAW TO YOUR IDEAS —

John J. O'Malley
JOMalley@volpe-koenig.com

November 3, 2006

Erik M. Pelton, Esquire
P.O. Box 100637
Arlington, VA 22210

**2 PAGES VIA FACSIMILE
TO 703-525-8089
ORIGINAL TO FOLLOW VIA US MAIL**

Re: Opposition No. 91166420
*Campagnolo S.R.L. vs. Burkina Wear, Inc.*
U.S. Trademark No. 78/438,884
CAMPNY

Dear Erik:

This responds to your November 2, 2006 letter.

In response to your inquiry, we will not withdraw our motion to suspend the proceedings pending the outcome of the civil action in the Eastern District of Pennsylvania. We believe that suspending the opposition proceedings pending the outcome of the civil action is a more efficient use of the TTAB's and the parties' resources since the District Court's decision is binding on the TTAB, but the TTAB's decision is not binding on the District Court.

With respect to your threatened motion to dismiss and motion for sanctions due to Campagnolo's alleged abuse of the TTAB proceedings, we remind you that you have not fully responded substantively to our July 26, 2006 letters, which raised concerns regarding your responses to Campagnolo's first set of discovery requests. Moreover, Campagnolo has produced over 5,000 pages of documents compared to the roughly 30 pages produced by the Applicant. Accordingly, if the Applicant moves to dismiss and for sanctions, Campagnolo will move to compel and for sanctions.

In addition, we note that Campagnolo has provided responses to your Second Set of Document Request and Interrogatories in the form of objections. To the extent that any further response may be required, Campagnolo does not refuse to respond.

Our position is that it is a waste of Board resources and the parties' time and effort to continue with discovery and negotiate the terms of a protective order at least until the Board decides the Motion to Suspend. If the case is suspended, that effort would have been wasted. As noted in the Motion to Suspend, Campagnolo agrees to provide additional responses within ten days if the TTAB denies our Motion.

*Patents    Trademarks    Copyrights    Trade Secrets    Litigation    Licensing*



Erik M. Pelton, Esquire  
Page 2

November 3, 2006

If you have any questions, please get in contact with us.

Very truly yours,

Volpe and Koenig, P.C.

By: _____  
John J. O'Malley

JJO/JBR/jyr